UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRIS PHILLIPS,<br>Plaintiff,<br><br>v.<br><br>RICHARD LOMAS AND<br>HIS MARITAL COMMUNITY,<br>Defendant. | Case No. _____<br><br>COMPLAINT FOR DAMAGES AND<br>JURY DEMAND |

1.  Plaintiff, Chris Phillips ("Phillips"), for his complaint against Defendant Richard Lomas,

    MD ("Lomas") and his marital community, hereby alleges as follows:

**PARTIES**

2.  Plaintiff, Phillips, resides in Massachusetts or Nova Scotia, Canada and intends on

    remaining in Nova Scotia.

3.  Defendant, Lomas, at all times pertinent to this litigation resided in Bellevue, Washington.

4.  Lomas was previously a member of a marital community.

5.  The other member of that marital community died and left an estate.

6.  Part of said estate is still in existence and has value.

7.  Lomas is currently not married.

**JURISDICTION AND VENUE**

8.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332. The matter in

    controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

9.  Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391, as

    Lomas resides in the Western District of Washington and the tortious acts alleged herein

occurred within said district.

## OPERATIVE FACTS

10. Unless otherwise indicated, the facts alleged in this complaint are stated upon information and belief, the personal knowledge of Phillips, statements made by Lomas, media reports, public disclosure requests, Freedom of Information Act requests, and/or other materials.

11. Lomas has caused the torts out of which this complaint arises, as set forth below.

12. While in the United States Navy, Phillips sustained a traumatic injury to his feet.

13. Phillips received a medical discharge from the United States Navy and receives disability payments from the military for this service-connected disability.

14. Phillips is rated as 100% disabled by the military due to a feet condition associated with significant pain.

15. Phillips also receives additional disability for loss of use of both feet due to pain.

16. Phillips has been rated as 100% disabled with loss of use of both feet ever since his internship.

17. Phillips chose ophthalmology specifically because ophthalmology does not require Phillips to be on his feet for extensive periods and allows Phillips to examine patients and perform surgery while sitting down.

18. Phillips' injury ultimately required numerous surgeries to fuse major joints in both feet and resulted in chronic pain.

19. Phillips required various medications and additional surgery to treat the pain.

20. After being discharged from the military, Phillips attended medical school.

21. Phillips completed medical school, internship, residency, and a Cornea-LASIK fellowship.

22. Phillips became a respected LASIK surgeon and ophthalmologist in Boston.

23. Phillips required medication for pain and obtained approval from Medical Boards in states in which he practiced to take said medication.

24. Phillips ability to practice medicine was closely monitored while taking said medications.

25. In July, 2007, Phillips, moved to Renton, Washington.

26. Beginning in late July, 2007, Phillips began working for Lomas Eyecare Center, PLLC (hereinafter "Lomas Eyecare Center").

27. Lomas was the sole shareholder of Lomas Eyecare Center.

28. On or about October 1, 2007, Phillips purchased virtually all assets of Lomas Eyecare Center for $1,783,000.00 paid to the benefit of Lomas (hereinafter, "the purchase").

29. Upon purchase, all assets became property of Seattle Eye Surgeons, PS (hereinafter, "Seattle Eye Surgeons"). Exhibit 1, Page 1-2 (hereinafter, Ex. __, P. __).

30. Phillips incorporated Seattle Eye Surgeons just prior to the purchase.

31. Phillips was the sole shareholder and President of Seattle Eye Surgeons.

32. Seattle Eye Surgeons had no assets prior to the purchase of Lomas Eyecare Center.

33. After the purchase, Seattle Eye Surgeons continued to do business under the name of "Lomas Eyecare Center."

34. Lomas and Seattle Eye Surgeons initially planned that Lomas would be given a one year contract for continued employment to commence upon purchase.

35. For various reasons and, in order to satisfy lending requirements, Lomas' employment contract was rescinded as part of the purchase and sale agreement. Ex. 2, P. 3-5.

36. Lomas became somewhat upset toward Phillips as a result of his employment contract being rescinded.

37. Seattle Eye Surgeons, however, did employ Lomas after the purchase, but only as an at-will employee.

38. Both Lomas and Phillips worked for Seattle Eye Surgeons as physicians and surgeons.

39. Lomas knew that Phillips was employed by Seattle Eye Surgeons.

40. Lomas knew Phillips was the sole shareholder of Seattle Eye Surgeons.

41. Lomas knew Phillips' ability to obtain patients in the fields of ophthalmology and LASIK surgery depended largely upon his reputation.

42. Seattle Eye Surgeons advertised heavily.

43. A large amount of advertising was associated with Phillips name and/or likeness.

44. Lomas knew that harm to Phillips reputation would adversely affect the reputation, value, and profitability of Seattle Eye Surgeons.

45. Phillips also desired employment as an expert witness in legal cases involving medicine.

46. Lomas knew Phillips desired employment as an expert witness in legal cases involving medicine.

47. Lomas knew Phillips' ability to obtain employment as an expert witness depended largely upon his reputation.

48. Phillips has also graduated from law school and desired to practice law.

49. Lomas knew Phillips graduated from law school and desired to practice law.

50. Lomas knew Phillips' ability to obtain clients as an attorney depended largely upon his reputation.

51. The practice was not very efficient at the time of the purchase and had numerous problems. These issues allowed Phillips to purchase the practice at a discount.

52. The practice also had a low profit margin as a result of being so inefficient.

53.  After the purchase, Phillips began making several changes.

54.  Some, but not all, of the changes are described in this complaint.

55.  Lomas did not like several of these changes.

56.  Phillips gradually fired and/or replaced several employees who were not performing well.

57.  It became apparent that even new employees fell into the same habits of the old employees when members of a group were replaced only one at a time because the employees learned the habits from other members of their group.

58.  Despite replacing various employees, efficiency only marginally improved.

59.  Making matters worse, replacing employees was putting patients at risk. The replacement employees did not have sufficient training and were making mistakes.

60.  Phillips determined that it would likely be necessary to temporarily close the practice, get rid of numerous poorly performing employees all at once, hire a small number of replacement employees, and provide the few remaining employees and the new employees intensive training such that, when the practice reopened, the changes would likely remain permanent. From a patient's point of view, this transition would also be safer and smoother.

61.  Upon reopening the practice, Phillips planned on renaming the practice.

62.  Lomas did not agree with Phillips decision to fire certain employees and appeared somewhat angry toward Phillips, but apparently hid most of his anger well.

63.  Lomas preferred performing LASIK surgery over cataract surgery.

64.  After the purchase, Phillips performed mostly LASIK surgery and made Lomas perform mostly cataract surgery.

65.  Lomas appeared somewhat angry toward Phillips as a result of Phillips changing his

surgical duties.

66.   Phillips would not always let Lomas take vacation when he desired.

67.   Lomas appeared somewhat angry toward Phillips as a result of Phillips desire to control the scheduling of Lomas' vacation.

68.   In approximately November, 2007, the pain in Phillips' left foot increased.

69.   In Phillips previous experience, such pain typically resulted from a small fracture in one of the smaller forefoot joints that had become so arthritic that it had begun to fuse on its own. Such pain usually lasted about three months and then resolved.

70.   As a result of increased pain, Phillips had to make landscaping changes in his yard so that he could more easily access his yard.

71.   Phillips' relationship between he and his homeowner's association was strained due to similar changes Phillips made previously.

72.   A neighbor and officer of Phillips home owner's association did not like Phillips' most recent changes. During one conversation regarding this issue, Phillips explained that he recently injured his foot, was in so much pain that narcotic pain medication was acutely necessary, and that many of the changes were only temporary while Phillips was healing.

73.   Phillips' neighbor was not informed of the name of the medication and Phillips gave no indication that the medication was chronically necessary.

74.   Unfortunately, the neighbor began telling other neighbors that Phillips was a drug addict.

75.   This rumor was extremely concerning to Phillips. The only individual who knew Phillips was prescribed narcotic medications over long periods was Phillips' wife. Phillips strongly desired to keep it that way and strongly desired to avoid such rumors in an effort to prevent inappropriate allegations.

76. Making matters worse, the pain medication Phillips was prescribed was methadone. While this drug is commonly known to treat heroin addicts, it has also become one of the most commonly prescribed drugs to treat chronic pain because it is quite effective but has much less potential for abuse than most narcotics since methadone is associated with minimal euphoria.

77. Phillips has never abused heroin and has never been prescribed methadone for anything other than chronic pain.

78. For obvious reasons, Phillips desired to keep his use of methadone private.

79. As a result of Phillips neighbor telling other neighbors that Phillips was a drug addict, Phillips became quite upset. The allegations were inappropriate.

80. Phillips felt it best to inform his parents about his medication both to seek advice and to prevent them from hearing it from someone else when visiting and socializing with neighbors.

81. Phillips' parents became concerned about Phillips overall wellbeing (both due to pain and the stress caused by the rumors in the neighborhood).

82. Phillips parents, who did not have a medical background or much understanding regarding the treatment of chronic pain, also became concerned about Phillips ability to practice medicine.

83. Due to family concerns and the risk of malpractice litigation, Phillips ultimately decided to try stopping narcotic medications altogether, or, at a minimum, switch to a different narcotic medication without the reputation associated with methadone, even though said medication would not likely be as effective.

84. To accomplish the above would likely require additional surgery and non-steroidal anti-

inflammatory drugs (hereinafter "NSAIDs"). Another option was for Phillips to remain off his feet for an extended period to give the arthritic joints a chance to fuse on their own thus avoiding most, if not all surgery. Due to work and decreased likelihood for success, the latter option was not very appealing.

85.  Phillips was concerned about additional surgery because he had already had so much surgery on his feet that he had poor blood circulation to the bones of his feet. As such, additional surgery carried with it an increased risk of complications.

86.  Phillips was also concerned because NSAIDs were very dangerous for Phillips to take. Previously, Phillips had two gastrointestinal bleeds from chronically taking NSAIDs.

87.  Phillips tried to decrease his dose of methadone but with little success initally. Phillips left foot was in more pain than normal and he faced an increased work schedule in January, 2008 requiring him to be on his feet even more than normal. Normally, these factors would require increased medication rather than decreased medication. Given these factors, the best Phillips could do while on his feet so much was maintain his previous dose. Even then Phillips was in a great deal of pain and was hardly able to sleep due to pain.

88.  During the above, Phillips sought the involvement of Washington Physician's Health Program and desired their approval before significantly changing his medication regimen.

89.  Due to pain, Phillips asked Lomas to take on some of Phillips duties. Lomas began doing more of the work that required Phillips to be on his feet while Phillips began doing more of the work that could be performed sitting down.

90.  Lomas had extensive personal experience with the use of NSAIDs.

91.  Phillips inquired of Lomas, as a physician, what would be the best anti-inflammatory drug for him to take for foot pain which also had a decreased risk for gastrointestinal bleeding.

92. Lomas recommended either Bextra or Relafen, but was not sure if Bextra was still on the market.

93. Lomas gave Phillips a prescription for both Bextra and Relafen.

94. Phillips could not fill the prescription for Bextra because it had been taken off the market.

95. In the process of the above, Phillips informed Lomas that anti-inflammatory drugs worked very well for Phillips, that he was currently taking methadone for chronic pain, and that he was hoping that anti-inflammatory and/or additional surgery would allow him to discontinue methadone.

96. Before Phillips revealed the above medical history to Lomas, Lomas promised Phillips that Lomas would keep Phillips' medical history private and promised he would not even reveal it to other staff at the clinic.

97. Eventually, the rumors in Phillips neighborhood had died down.

98. Despite the fact that Phillips use of narcotic medications was appropriate, Washington Physician's Health Program and Phillips remained concerned about what may result if patients found out about Phillips' use of narcotic medication. In such a case, and even in absence of any negligence, Phillips faced great legal risk. Such attention would also be damaging to the general reputation of physicians in the state.

99. For the above reasons, Washington Physician's Health Program and Phillips agreed that, to avoid any unnecessary risk due to the above, Phillips would undergo a formal evaluation to document whether Phillips can continue narcotic medication.

100. During the evaluation, it was initially determined that Phillips could continue narcotic medication. Despite the risk of other treatments such as NSAIDs and additional surgery, Phillips desired to at least attempt to stop completely and rely instead on large doses of

NSAIDs or other anti-inflammatory agents and, if necessary, additional surgery. Stopping the medications would require Phillips to take a few weeks off work.

101. Washington Physician's Health Program was not opposed to Phillips' plan, but wanted Phillips to decrease his dose of methadone slowly.

102. Phillips wanted to get it over with and wanted to return to work without intense scrutiny by the State and everyone else during the process. As such, Phillips desired decrease his dose of methadone much more quickly.

103.  In the end, Phillips chose to discontinue methadone rather abruptly. This made Phillips quite sick. Phillips took some time off work during this process.

104. On February 8, 2008 Phillips received a frantic call from Glynis Thakur, a consultant he had hired.

105. Glynis Thakur informed Phillips that Lomas was very angry and was yelling very loudly in the clinic about Phillips using methadone.

106. Glynis Thakur informed Phillips that numerous staff and patients heard what Lomas said.

107. Glynis Thakur informed Phillips that she requested staff to keep quiet about the issue but that nearly everyone was talking about it and that many simply assumed that Phillips was a heroin addict.

108. Phillips immediately drove to the clinic and confirmed the above.

109. Phillips specifically asked various staff if they heard Lomas yell about Phillips using methadone.

110. Various staff confirmed that they heard Lomas yell about Phillips using methadone.

111. Various staff also confirmed that patients heard the same.

112. Phillips spoke with two patients who confirmed that they heard Lomas yell about Phillips

using methadone.

113. Phillips personally met with Lomas and Lomas admitted that he yelled about Phillips using methadone.

114. Lomas admitted that he yelled some of the statements regarding Phillips using methadone while on a telephone located in the clinic.

115. Lomas admitted that during said conversation he was speaking with his girlfriend.

116. Based on Lomas' conversation with Phillips it became clear to Phillips that Lomas was angry with Phillips and revealed Phillips use of methadone intentionally, recklessly, with malice, and with the intent to cause Phillips emotional distress.

117. Everyone was now aware of Phillips use of methadone.

118. Most of the staff simply assumed that Phillips use of methadone was associated with heroin addiction.

119. Rather than face the risk of such a damaging rumor, Phillips had no choice but to mitigate damages by explaining to his staff the truth behind why he previously used methadone.

120. Phillips immediately canceled numerous patients and requested that all staff meet in the lounge/kitchen area of the medical practice for a private meeting.

121. At said meeting, Phillips and Glynis Thakur explained that Phillips was not a heroin addict, that he sustained an injury in the military, and that he previously used methadone to treat chronic pain only but was no longer taking methadone.

122. Both Phillips and Glynis Thakur demanded that staff keep the issue to themselves and to maintain Phillips' confidentiality.

123. In the event that any patient asked about Phillips' absence, the staff were advised to inform the patient that Phillips was on sick leave. In the event that any patient asked about

Phillips using methadone, the staff were advised to let Glynis Thakur or Kim Hogan (the clinic manager) address the issue with the patient.

124. The above damage control measures did not prevent the rumor from spreading.

125. When Phillips informed Washington Physician's Health Program that his use of narcotic pain medication, including the specific name of the medication, was now known to staff and patients, Washington Physician's Health Program became extremely cautious regarding the issue.

126. As a result, Washington Physician's Health Program recommended longer inpatient evaluations despite the fact that Phillips was not, at the time, even using methadone.

127. Phillips had to pay for most of these services privately, out of his own pocket.

128. While Phillips was unable to work and against Phillips wishes, Lomas took an extended vacation.

129. During this period, there was no surgeon available to perform surgery other than temporary surgeons Phillips hired to fill in, but at great expense.

130. Given the above, Phillips felt there would be no better time to temporarily close the practice, reorganize the practice, replace numerous poorly performing employees all at once, and, while the clinic was closed, ensure that the new employees had enough time to become oriented. When the practice was finally ready, Phillips planned to reopen the practice under a name other than one associated with the previous owner, "Lomas."

131. Phillips planned on firing the vast majority of the employees, having physicians do most of the work initially so that they fully understood the work required and could then appropriately oversee the individual employees assigned to them it became time to hire additional employees.

132. Upon temporarily closing the practice and firing numerous employees, some of the employees became angry.

133. A few employees went to the media and told the media that Phillips was a drug addict on methadone.

134. Lomas, himself, spoke with at least one media outlet.

135. The media were extremely interested in the doctor that was on methadone.

136. As a result, the Washington media began heavily covering the closure of the practice.

137. In the process, the media presented Phillips in an extremely unfavorable light.

138.  The adverse media coverage spread to other states.

139. Said states included Washington, Oregon, Texas, Oklahoma, and Massachusetts.

140. Adverse stories were published in every state in which Phillips had ever practiced.

141. As a result of the adverse media coverage, numerous patients began filing complaints with the Washington State Department of Health.

142. Said complaints were inappropriate and would not have occurred absent the media coverage.

143. The media coverage would not have occurred absent Lomas telling others about Phillips use of methadone.

144. Such complaints are very damaging to a physician.

145. Phillips spent considerable time and effort defending himself against these inappropriate complaints.

146. Phillips personal and professional reputation was significantly harmed by said media coverage and said complaints.

147. Phillips' ability to practice medicine was significantly harmed by said media coverage and

complaints.

148. Phillips has been unable to find work as a physician as a result of Lomas' disclosure and the media coverage that followed.

149. Phillips ability to practice law and obtain clients was significantly harmed by said media coverage and complaints.

150. Phillips ability to be an expert witness was significantly harmed by said media coverage and complaints.

151. As a result of the adverse media coverage, the reputation of Seattle Eye Surgeons was severely tarnished.

152. Since Seattle Eye Surgeons heavily relied on its reputation and Phillips' reputation to attract patients desiring surgery such as LASIK it became quite obvious to Phillips that he would never be able to successfully reorganize the practice.

153. As a result, Seattle Eye Surgeons was not able to reopen.

154. Phillips became emotionally distressed as a result of Lomas' disclosure.

155. The distress manifested itself in physical symptoms.

156. Phillips obtained treatment for emotional distress and its associated physical symptoms.

157. As a result of Phillips personally securing various loans to Seattle Eye Surgeons, Phillips had do declare personal bankruptcy.

158. Said bankruptcy was Phillips first and only personal bankruptcy.

159. The bankruptcy petition was filed on July 2, 2007.

160. The bankruptcy petition was a Chapter 7 petition, and was filed as Case No 08-14147 in the Bankruptcy Court for the Western District of Washington.

161. A copy of the relevant portions of Phillips personal bankruptcy petition are attached as Ex.

3, P. 6-15.[1]

162. Phillips scheduled his claims against Lomas on his bankruptcy petition. Ex. 3, page 11, # 21.

163. All causes of action Phillips had against Lomas or anyone else, whether Phillips scheduled the claims or not[2] and whether the claims were exemptible or not,[3] became property of the bankruptcy estate on July 2, 2008.[4,5]

164. All causes of action Phillips could bring against Lomas were stayed beginning on July 2, 2008.[6,7]

165. The stay remained in place until the causes of action were no longer property of the estate.[8]

---

[1] To avoid confusion, the page numbers associated with the exhibits attached to this motion are *continuously* numbered in the lower right hand corner of each page.

[2] See, for example, In re Stephenson, 415 B.R. 436, 443 (Bankr. D. Idaho 2009).

[3] See, for example, In re Bronner, 135 B.R. 645, 648 (B.A.P. 9th Cir. 1992).

[4] "The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541 (a).

[5] "The legislative history of the Bankruptcy Code reveals that the concept of property of the estate is to be interpreted broadly. H.R.Rep. No. 595, 95th Cong., 1st Sess. 367-68 (1977), *reprinted in* U.S.C.C.A.N. 5787, 5963, 6323-24. Similarly, the Supreme Court has affirmed that the scope of § 541(a)(1) is broad, covering all kinds of property, including tangible or intangible causes of action and all other forms of property previously specified in § 70(a) of the Bankruptcy Act." In re Chappel, 189 B.R. 489, 493 (9th Cir. BAP 1995) citing United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & n. 9 (1983).

[6] "Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of-- ... (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" 11 U.S.C. § 362(a).

[7] "The scope of sec. 362(a) is very broad, with narrow exceptions as listed in sec. 362(b). Outside of these limited exceptions, the stay applies to "almost any type of formal or informal action against the debtor or the property of the estate." R.S. Ranches, Inc. v. Gerard, 16364-4-III, 1998 WL 283534 (Wash. Ct. App. June 2, 1998) citing 2 Collier on Bankruptcy £ 362.04, at 362-34 (Lawrence P. King ed., 15th ed. 1991).

166. Phillips expressed to the Bankruptcy Trustee a desire to pursue the tort claims he scheduled in his petition.

167. Normally, a Bankruptcy Trustee will allow a debtor to exempt such claims and/or abandon such claims to the debtor at the close of the bankruptcy case.

168. The Bankruptcy Trustee for Phillips' estate, however, objected to Phillips' claimed exemption in the claims (Ex. 4, page 19, line 23) due to the fact that the value of the claims likely exceeded the exemptible amount.

169. Moreover, the Bankruptcy Trustee refused to abandon the claims to Phillips unless Phillips agreed to enter a settlement agreement with the bankruptcy estate in consideration for all rights to the non-exemptible portion of the claims.

170. After agreeing to a settlement and receiving approval from the Bankruptcy Court, the claims would finally be abandoned to Phillips.

171. In an effort to increase the amount Phillips had to pay for the claims, thus increasing income to the estate, the Bankruptcy Trustee attempted to garner interest from various entities Phillips desired to sue. The desire was to create a competitive bidding process for rights to the non-exemptible portion of the claims.

172. The trustee had surprisingly little success in creating such competition with only Lomas bidding against Phillips.

173. After lengthy negotiations between the Bankruptcy Trustee, Phillips, and Lomas, Phillips was able to purchase all rights to the non-exemptible portion of the claims for only

---

[8] "Except as provided in subsections (d), (e), (f), and (h) of this section--(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate" 11 U.S.C. § 362(c).

$12,000 even though, in Phillips' opinion, the value of the possibly non-exemptible

portion of those claims greatly exceeded $12,000.

174. The bankruptcy court had to approve the agreement before it became final.

175. The agreement between the Bankruptcy Trustee and Phillips was approved by the

bankruptcy court on November 6, 2009.

176. A true and exact copy of the bankruptcy court order is attached as Ex. 4, P. 16-21 and is

entitled "Order Approving Compromise of Claim."

177. The Bankruptcy Court order stated that the order would not go into effect until the

Bankruptcy Trustee filed a Notice of Abandonment with the court. Ex. 4, P. 18.

178. The Bankruptcy Trustee filed the Notice of Abandonment on November 19, 2009.

179. A true and exact copy of the Notice of Abandonment is attached as Ex. 5, P. 22-25.

180. Due to the complex nature of Phillips' bankruptcy, Phillips had to amend his Schedule B

(the portion of the bankruptcy schedules where potential claims are to be listed).

181. The Notice of Abandonment refers to Phillips' most recent Amended Schedule B.[9]

182. A true and exact copy of the most recent Amended Schedule B (which was filed on

August 27, 2009) is attached as Ex. 6, pages 26-34.[10]

---

[9] The Notice of Abandonment indicates that said amendment was filed August 28, 2009. Said date is one day off. No Amended Schedule B was filed on August 28, 2009. The amendment was filed on August 27, 2009 and entered into the docket on August 31, 2009. No other amendments were filed near this time period. The error is of no significance, however, because, as indicated in the case law cited in this pleading, even unscheduled assets become property of the bankruptcy estate upon filing of a Chapter 7 petition. Furthermore, a Bankruptcy Trustee can abandon unscheduled assets as long as he has been informed of their existence. See, for example, Tschirn v. Secor Bank, 123 B.R. 215 (E.D. La. 1991). The fact that the Bankruptcy Trustee drafted the formal Notice of Abandonment demonstrates that he was aware of the claims. Such an abandonment is irrevocable. Id. at 218.
[10] When the Amended Schedule B was filed, it was also filed with an Amended Schedule C. The first eight pages of the August 27th filing compose the entirety of the Amended Schedule B.

183. Phillips' claim against Lomas is located at Ex. 5, page 24, Line 9 and Ex. 6, page 31 and is listed on the Notice of Abandonment (Ex. 5 page 24, Line 9) as "Potential claim against Dr. Richard Lomas for defamation and similar or related torts."

184. All actions Phillips had against Lomas were, thus, stayed from July 2, 2008 to November 19, 2009 pursuant to RCW § 4.16.230.[11,12]

185. As such, the period of time from July 2, 2008 to November 19, 2009 (505 days) is not part of the time limited for the commencement of this action.

186. As a result of the media coverage, it also became apparent that Seattle Eye Surgeons would declare bankruptcy.

187. On August 20th, 2008, Phillips entered into an agreement with Seattle Eye Surgeons to purchase all assets that the future bankruptcy trustee for Seattle Eye Surgeons chose to abandon or failed to administer. Ex. 7, P. 35-37.

188. On October 18, 2008, Seattle Eye Surgeons filed a Chapter 7 bankruptcy petition.

189. The bankruptcy petition for Seattle Eye Surgeons was filed in the Bankruptcy Court for the Western District of Washington, Case No. 08-16943.

190. Applicable portions of the bankruptcy petition for Seattle Eye Surgeons are located at Ex. 8, P. 38-46.

191. The claim against Richard Lomas is listed at Ex. 8, P. 44.

192. On June 30, 2008, the schedules for Seattle Eye Surgeons were amended to list the

[11] "When the commencement of an action is stayed by injunction or a statutory prohibition, the time of the continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action." RCW § 4.16.230.

[12] "When a person is prevented from exercising his legal remedy by some positive rule of law, the time during which he is prevented from bringing suit is not to be counted against him in determining whether the statute of limitations has barred his right even though the statute makes no specific exception in his favor in such cases." (Citations Omitted). Seamans v. Walgren 82 Wn.2d 771, 775 (1973).

potential claims with more specificity. Ex. 9, P. 47-51.

193. The Claim against Lomas is located at Ex. 9, P. 51 and is listed as "Claim for damages against Dr. Richard Lomas stemming from defamation of Seattle Eye Surgeons owner, Dr. Christopher Phillips and similar or related torts."

194. Phillips offered to purchase all claims from the Bankruptcy Trustee for Seattle Eye Surgeons, but the Bankruptcy Trustee did not feel it was worth his time to deal with the purchase and the paperwork involved.

195. As a result, the Bankruptcy Case involving Seattle Eye Surgeons was closed on August 24, 2010. Ex. 10, P. 55 (last docket item).

196. As a result, Seattle Eye Surgeons claim against Lomas was abandoned on August 24, 2010.[13]

197. For the above reasons, Seattle Eye Surgeons claim against Lomas was tolled from October 18, 2008 to August 24, 2010 (680 days).

198. In approximately April, 2009, Phillips was approached by an individual near his home. The individual identified Phillips from the media coverage. The individual then assaulted Phillips. Phillips defended himself. The individual pulled a knife and subsequently stabbed Phillips.

199. The assault and stabbing were proximately caused by Lomas' statements regarding Phillips using methadone.

200. With the intent to cause Phillips further emotional distress, Lomas continued making statements regarding Phillips use of methadone.

201. Lomas statements continued until at least March, 2009.

---

[13] See 11 U.S.C. § 554(c).

## CAUSES OF ACTION[14]

**Count I**

### Violation of the Uniform Health Care Information Act, RCW Chapter 70.02

202. Phillips incorporates the above allegations by reference.

203. Lomas is a health care provider.

204. Lomas was providing care and services to diagnose, treat or maintain Phillips' physical or mental condition which also affected the structure or function of Phillips body.

205. Lomas disclosed health care information about Phillips without consent and in violation of the terms of RCW Chapter 70.02.

206. As a result of Lomas' disclosure, Phillips has suffered damages in an amount to be proven at trial.

**Count II**

### Breach of Fiduciary Duty

207. Phillips incorporates the above allegations by reference.

208. When Lomas agreed to provide medical care to Phillips, he became bound by a fiduciary duty to Phillips.

209. By breaching Phillips' confidentiality, Lomas breached his fiduciary duty to Phillips

210. As a direct and proximate result of Lomas' actions, Phillips has suffered damages in an

---

[14] A couple days before filing this complaint, Phillips made a good faith request for mediation pursuant to RCW 7.70.110. Only out of a desire to ensure protection of all causes of action, Phillips previously considered including a cause of action for medical malpractice in this complaint pursuant to RCW Chapter 7.70. It appears, however, that it is not absolutely necessary for Phillips to include a cause of action for medical malpractice at this point since the offer for mediation tolled the cause of action for one year. Furthermore, filing a cause of action for medical malpractice without giving Lomas very much time to respond could suggest a lack of good faith. As such, Phillips will hold off on including a claim for medical malpractice at this point so that Lomas has ample time to mediate with Phillips if he desires to do so.

amount to be proven at trial.

**Counts III and IV.**

### Intentional AND Negligent Infliction of Emotional Distress

211. Phillips incorporates the above allegations by reference.

212. Lomas' actions toward Phillips in intentionally and negligently communicating confidential information regarding Phillips with the intent to cause Phillips emotional distress constitutes intentional infliction of emotional distress.

213. Lomas' actions were extreme in degree, outrageous in character, went beyond all possible bounds of decency, and are regarded as atrocious and utterly intolerable in a civilized community.

214. As a result of Lomas' intentional infliction of emotional distress, Phillips has suffered physical injury and emotional distress exhibited by objective symptoms and continues to suffer emotional distress exhibited by objective symptoms.

215. Lomas' actions damaged Phillips in an amount to be proven at trial.

**Counts V AND VI**

### Intentional Interference with Contractual Relations AND Interference with a Prospective Advantage

216. Phillips incorporates the above allegations by reference.

217. Phillips had a valid contractual relationship with Seattle Eye Surgeons.

218. Seattle Eye Surgeons had a valid contractual relationship with Phillips.

219. Lomas had knowledge the above contractual relationships and intentionally interfered with that expectancy inducing termination of the relationship when Lomas revealed Phillips confidential medical information resulting in significant and adverse media coverage. Said media coverage adversely affected both Phillips and Seattle Eye Surgeons.

220. As a result of the above, Phillips personal and professional reputations were substantially damaged, Seattle Eye Surgeon's reputation was substantially damaged, and, in essence, the corporation itself was destroyed.

221. As a result of Lomas' breach of Phillips confidentiality, Phillips also faces increased difficulty forming future business relationships and Seattle Eye Surgeons, for all intents and purposes, is unable to form future business relationships. Lomas knew his statements would result in Phillips and Seattle Eye Surgeons having increased difficulty forming future business relationships.

222. Lomas interfered for an improper purpose and with improper means.

223. Lomas' actions damaged Phillips' prospective advantage and interfered with his contractual relations.

224. Lomas' actions damaged Seattle Eye Surgeons' prospective advantage and interfered with the corporation's contractual relations.

**Count VII**

**Public Disclosure of Private Facts**

225. Phillips incorporates the above allegations by reference.

226. Phillips use of methadone constitutes a private fact.

227. Lomas intentionally disclosed this private fact.

228. The disclosure of this private fact was substantial and resulted from conduct that would be highly offensive and objectionable to the ordinary person.

229. The disclosure would be highly offensive to a reasonable person.

230. The disclosure was of something that the general public would not have known.

231. The fact disclosed was not of legitimate concern to the public.

232. As a result of Lomas intentional conduct, Phillips has suffered and continues to suffer damages in an amount to be determined at trial.

**Count VIII**

### Publication in a False Light

233. Phillips incorporates the above allegations by reference.

234. Lomas intentionally placed Phillips in a false light when he disclosed Phillips' use of methadone.

235. Lomas' publication suggested that Phillips was a heroin addict.

236. Lomas published the statement with the intent to make Phillips appear to be a heroin addict.

237. The publication was substantial and resulted from conduct that would be highly offensive and objectionable to the ordinary person.

238. The publication would be highly offensive to a reasonable person.

239. The publication involved matters which general public would not have known.

240. The publication involved private affairs and was not of a legitimate concern to the public.

241. As a result of Lomas intentional conduct, Phillips has suffered and continues to suffer damages in an amount to be determined at trial.

**Count IX**

### Negligence

242. Phillips incorporates the above allegations by reference.

243. Lomas failed to exercise ordinary care when he disclosed Phillips' private medical information without consent.

244. Lomas owed Phillips a duty not to disclose his private medical information without consent.

245. Lomas breached that duty by disclosing said information without consent.

246. Lomas' actions proximately caused damage to Phillips

247. Phillips suffered damages and continues to suffer damages in an amount to be determined at trial.

**Count X**

**Violation of Contract Implied in Law**

248. Washington law imposed an obligation on Lomas barring Lomas from releasing Phillips confidential medical information without Phillips' consent.

249. The relationship between Lomas and Phillips was such that Phillips had a right to expect confidentiality and Lomas had a duty to protect said confidentiality.

250. Lomas violated the obligation imposed upon him by breaching Phillips confidentiality.

251. Said violation was a proximate cause of substantial damages sustained by Phillips.

**Count XI and XII**

**Implied Indemnity and Contractual Indemnity**

252. The relationship between Lomas and Phillips caused Phillips to incur liability that Lomas should have assumed.

253. The relationship between Lomas and Phillips was such that Phillips incurred an obligation that Lomas should discharge.

254. Lomas has not assumed or discharged the damages Phillips sustained as a result of Lomas improper actions.

**PRAYER FOR RELIEF**

255. Now therefore, Phillips prays for relief as follows:

256. For judgment in favor of Phillips and against Lomas and his marital community on all

     counts.

257. For actual damages and punitive damages which shall be determined at trial.

258. For costs associated with bringing and prosecuting this action, including attorney fees

     and/or a reasonable compensation for Phillips in return for his labor in acting as his own

     attorney.

259. For such further relief as the court deems just and equitable.

## JURY DEMAND

260. Phillips hereby demands a trial by jury on all issues so triable.

## GOOD FAITH CERTIFICATION

261. Phillips certifies that there is a good-faith basis in law and fact for the claims asserted.


DATED THIS 7th day of February, 2011.


Chris Phillips, MD, JD, MBA
*Pro se*
43 Parkedge Cr.
Dartmouth, Nova Scotia  B2V 2V1
Canada
(902) 434-5235

Exhibit 1

# FIRST AMENDMENT TO
## ASSET PURCHASE AND SALE AGREEMENT

This First Amendment ("Amendment") to the Asset Purchase and Sale Agreement assigns, amends and modifies the Asset Purchase and Sale Agreement dated June 19, 2007 ("Agreement") by and between Lomas Eye Care Center, P.L.L.C., a Washington professional limited liability company ("Seller"), Seattle Eye Surgeons, a professional service corporation ("Buyer") and Dr. Christopher B. Phillips, a single person ("Dr. Phillips").

The parties hereby agree that the Agreement shall be assigned and amended as follows:

1.      Dr. Phillips hereby assigns to Seattle Eye Surgeons, a professional service corporation, ("Buyer") the Agreement and Buyer hereby agrees to assume the rights and obligations of the Agreement and perform them according to their terms.   The first paragraph of the Agreement is hereby amended to change the name of the Buyer.  The Buyer shall be Seattle Eye Surgeons, a professional service corporation.  Dr. Christopher B. Phillips shall personally guarantee all of the obligations of the Buyer and shall execute a personal guaranty in the form attached as Exhibit A to this Amendment at Closing.

2.      Paragraph 6.1 of the Agreement is hereby amended to extend the final Closing Date to October 1, 2007.  Buyer hereby agrees that he will notify Seller immediately upon receiving written confirmation that he has received a loan commitment for purchase of the assets. Closing shall take place within ten days of the date Buyer receives such commitment but no later than October 1, 2007.  Buyer hereby acknowledges and agrees that he has received his medical license for the State of Washington.

3.      All other terms and conditions of the Asset Purchase and Sale Agreement not modified herein shall remain in full force and effect.

Dated: August 29, 2007
SELLER:  LOMAS EYE CARE CENTER, P.L.L.C.,       BUYER:  SEATTLE EYE SURGEONS,
a Washington professional limited liability company       a professional service corporation

By: _____
Richard W. Lomas, M.D.
Its:  Sole Member
                                                          By: _____
                                                          Christopher B. Phillips, M.D., President

                                                          _____
                                                          Christopher B. Phillips, M. D.,
                                                          Individually

C:\Documents and Settings\Marilyn\Local Settings\Temporary Internet
Files\OLK4A8\First Amendment to PSA (B0009548).DOC - LECC
08/30/07

2

Exhibit 2

SEP-21-2007 10:48   HANSON BAKER                           P.02
Sep 20 07 04:00p   Lomas Eye Care Center 425                          P.06/09
                                                                      p.6

# SECOND AMENDMENT TO
## ASSET PURCHASE AND SALE AGREEMENT

This Second Amendment ("Second Amendment") to the Asset Purchase and Sale Agreement assigns, amends and modifies the Asset Purchase and Sale Agreement dated June 19, 2007 ("Agreement"), and First Amendment to Asset Purchase and Sale Agreement dated August 29, 2007 ("First Amendment"), by and between Lomas Eye Care Center, P.L.L.C., a Washington professional limited liability company ("Seller"), Seattle Eye Surgeons, a professional service corporation ("Buyer") and Dr. Christopher B. Phillips, a single person ("Dr. Phillips"). Dr. Richard Lomas enters into this Second Amendment for the sole purpose of modifying the provisions of the Agreement relating to the Employment Contract, which is hereby deleted.

The parties hereby agree that the Agreement shall be amended as follows:

1.      Section 5, Transition Period, and Exhibit B, Employment Contract, together with Exhibit B's attachment, "Exhibit A to Employment Agreement Dr. Lomas Fringe Benefits," are hereby deleted.

2.      A new Section, titled "5. Covenant Not to Compete" shall be added to the Agreement and shall read as follows:

    Seller and Dr. Lomas agree that neither Seller nor Dr. Lomas will be connected, in any way, directly or indirectly, as an owner, manager, employee, or in any other capacity, with a business which provides laser surgery or cataract surgery services within five (5) miles of Renton, Washington for a period of five (5) years from the date of the Closing of the sale of Seller's assets to Buyer. Seller and Dr. Lomas expressly agree that Buyer may be entitled to injunctive or other equitable relief in the event of a breach of this covenant not to compete

3.      Subsection 6.5(d), which states "A signed Employment Agreement in the form attached as Exhibit B," is hereby deleted.

4.      Paragraph 6.6, Performance of Dr. Lomas at Closing, which provides "At Closing, Dr. Lomas shall deliver to Buyer the Employment Agreement in the form attached as Exhibit B," is hereby deleted.

5.      Subsection 6.7(c), which states "A signed Employment Agreement," is hereby deleted.

6.      That portion of the Paragraph at the bottom of page 21, the "signature" page which states, "Richard W. Lomas, M.D. hereby agrees to enter into the Employment Agreement described in Section 5 herein and agrees to the Indemnification Obligations set forth in Section 11.2(b" is hereby deleted in its entirety and the following substituted in its place: "Richard W. Lomas, M.D. hereby agrees to the Indemnification Obligations set forth in Section 11.2(b."

Page 1 of 2

All other terms and conditions of the Asset Purchase and Sale Agreement and First Amendment to Asset Purchase and Sale Agreement not modified herein shall remain in full force and effect.

Dated: ___9/21/07___, 2007

SELLER: LOMAS EYE CARE CENTER, P.L.L.C., a Washington professional limited liability company

By: _Richard W. Lomas_
Richard W. Lomas, M.D.
Its: Sole Member

_Richard W. Lomas_

Richard W. Lomas M.D., Individually

BUYER: SEATTLE EYE SURGEONS, a professional service corporation

By _Christopher B. Phillips_
Christopher B. Phillips, M.D., President

_Christopher B. Phillips_

Christopher B. Phillips, M. D., Individually

Page 2 of 2

TOTAL P.03

5

Exhibit 3

| United States Bankruptcy Court<br>Western District of Washington | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Phillips, Christopher,** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**d/b/a Seattle Eye Surgeons, PS d/b/a Lomas LASIK and Eye Surgery Center** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN(if more than one, state all): **6430, UBI #602738204** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN(if more than one, state all): |
| Street Address of Debtor (No. & Street, City, and State):<br>**1800 SE 8th St<br>Renton, WA**      ZIP CODE **98057** | Street Address of Joint Debtor (No. & Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>**King** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ☑ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)<br>_____ | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☑ Other | ☑ Chapter 7    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9<br>☐ Chapter 11    ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>☐ Chapter 12<br>☐ Chapter 13 |

| | Tax-Exempt Entity<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code.) | Nature of Debts<br>(Check one box)<br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."    ☑ Debts are primarily business debts. |
|---|---|---|

| Filing Fee (Check one box)<br>☑ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b) See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Chapter 11 Debtors<br>Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes<br>☐ A plan is being filed with this petition<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |
|---|---|

| Statistical/Administrative Information<br>☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

Estimated Number of Creditors

| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Liabilities

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ |

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Christopher Phillips** |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location<br>Where Filed: **NONE** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**NONE** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

<table>
<tr>
<td><b>Exhibit A</b><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>❑   Exhibit A is attached and made a part of this petition.</td>
<td><b>Exhibit B</b><br>(To be completed if debtor is an individual whose debts are primarily consumer debts)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X   <b>Not Applicable</b><br><hr>Signature of Attorney for Debtor(s)       Date</td>
</tr>
</table>

| **Exhibit C** |
|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?<br>❑   Yes, and Exhibit C is attached and made a part of this petition.<br>☑   No |

| **Exhibit D** |
|---|
| (To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)<br><br>☑   Exhibit D completed and signed by the debtor is attached and made a part of this petition.<br><br>If this is a joint petition:<br><br>❑   Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition. |

| **Information Regarding the Debtor - Venue**<br>(Check any applicable box) |
|---|
| ☑   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>❑   There is a bankruptcy case concerning debtor's affiliate. general partner, or partnership pending in this District.<br><br>❑   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District. or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District. |

| **Certification by a Debtor Who Resides as a Tenant of Residential Property**<br>(Check all applicable boxes.) |
|---|
| ❑   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following).<br><br><hr>(Name of landlord that obtained judgment)<br><br><hr>(Address of landlord)<br><br>❑   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and<br><br>❑   Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.<br><br>❑   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)). |

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Christopher Phillips** |

## Signatures

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br><br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br><br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only **one** box.)<br><br>☐ I request relief in accordance with chapter 15 of Title 11, United States Code. Certified Copies of the documents required by § 1515 of title 11 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the Chapter of title 11 specified in the petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. |
| X **s/ Christopher Phillips** | X **Not Applicable** |
| Signature of Debtor   **Christopher Phillips** | (Signature of Foreign Representative) |
| X **Not Applicable** | |
| Signature of Joint Debtor | (Printed Name of Foreign Representative) |
| Telephone Number (If not represented by attorney) | |
| **7/2/2008** | |
| Date | Date |

| **Signature of Attorney** | **Signature of Non-Attorney Petition Preparer** |
|---|---|
| X **/s/ Gloria Z. Nagler** | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached. |
| Signature of Attorney for Debtor(s) | |
| **Gloria Z. Nagler  Bar No. 13176** | |
| Printed Name of Attorney for Debtor(s) / Bar No. | |
| **NAGLER & ASSOCIATES** | |
| Firm Name | **Not Applicable** |
| **Logan Building, Ste. 927 500 Union Street** | Printed Name and title, if any, of Bankruptcy Petition Preparer |
| Address | |
| **Seattle, WA 98101-2332** | Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |
| **(206) 224-3460**          **(206) 224-3463** | |
| Telephone Number | |
| **7/2/2008** | Address |
| Date | |
| *In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | X **Not Applicable** |
| | Date |

| **Signature of Debtor (Corporation/Partnership)** | Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above. |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition. | Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach to the appropriate official form for each person. |
| X **Not Applicable** | *A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |
| Signature of Authorized Individual | |
| Printed Name of Authorized Individual | |
| Title of Authorized Individual | |
| Date | |

**9**

B6B (Official Form 6B) (12/07)

In re  **Christopher Phillips**                                             ,          Case No. _____
                              Debtor                                                              (If known)

# SCHEDULE B - PERSONAL PROPERTY

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand | | **100.00** | | **100.00** |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Key Bank**<br>**53 SW Sunset Blvd.**<br>**Renton, WA  98057**<br><br>**Checking account #472572052968** | | **44.96** |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | **Bedroom furniture, couch, loveseat, chair, coffee table, end tables, TV, DVD player, dining table and chairs, laptop, cookware, dishware, kitchen untensils, small kitchen appliances,** | | **3,000.00** |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | **Hardcover and paperback books, Cds, DVDs, framed prints** | | **70.00** |
| 6. Wearing apparel. | | **Mens clothing, outerwear and shoes** | | **50.00** |
| 7. Furs and jewelry. | | **Wedding band** | | **100.00** |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies.  Name insurance company of each policy and itemize surrender or refund value of each. | | **New York Life Insurance Co.**<br>**4343 N. Scottsdale Rd.**<br>**Suite 200**<br>**Scottsdale, AZ  85251**<br><br>**Term Life policy #76215630** | | **0.00** |
| 10. Annuities.  Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | **TD Ameritrade**<br>**P.O. Box 2209**<br>**Omaha, NE  68103-2209**<br><br>**IRA #786002136** | | **25,142.62** |
| 13. Stock and interests in incorporated and unincorporated businesses.  Itemize. | | **Ameritrade**<br>**P.O. Box 2270**<br>**Omaha, NE  68103-2270**<br><br>**Stock account #870504393** | | **0.00** |

B6B (Official Form 6B) (12/07) -- Cont.

In re   **Christopher Phillips**                                          ,        Case No. _____
        Debtor                                                                              (If known)

# SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | **Seattle Eye Surgeons, PS d/b/a Lomas LASIK and Eye Surgery Center**<br><br>**100% ownership**<br><br>**Debts and expenses exceed income and assets.** | | **0.00** |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Back pay owed by Seattle Eye Surgeons.**<br><br>**Likely uncollectible** | | **426.67** |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | **2007 Tax refund.**<br><br>**Estimated and unfiled** | | **3,000.00** |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Possible claims against: International Optical, Tom Foster, Ann Foster, Valley Eye & Laser Center, Inc., Paul Joos, M.D., Peter Jones, M.D., Chris Monson, M.D., Viet Bui, M.D. for various torts including conversion.** | | **unknown** |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Potential claim against Dr. Richard Lomas and Lomas Lasik & Eye Care Center, Inc. for fraudulent misrepresentation associated with sale of business** | | **unknown** |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Potential claim against Dr. Richard Lomas for defamation.**<br><br>**Value unknown at this time, but Debtor intends to exempt entire claim** | | **unknown** |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Potential claim against landlord for deposit held** | | **1,675.00** |

B6B (Official Form 6B) (12/07) -- Cont.

In re    **Christopher Phillips**_____,          Case No. _____
                          Debtor                                                                    (If known)

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Potential Claim for libel and slander against neighbor.**<br><br>**Value unknown at this time, but Debtor intends to exempt entire claim** | | **unknown** |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Potential claims media for libel and slander.**<br><br>**Value unknown at this time, but Debtor intends to exempt entire claim** | | **unknown** |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Potential medical malpractice claim against Hazeldon Foundation**<br><br>**Value unknown at this time, but debtor intends to exempt entire claim** | | **unknown** |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **The Prairie Eye  Center**<br>**2020 W. Iles Ave**<br>**Springfield IL  62707**<br><br>**Breach of contract claim** | | **169,000.00** |
| 22. Patents, copyrights, and other intellectual property.  Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles.  Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2001 Accura MDX** | | **9,500.00** |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested.  Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |

**B6B (Official Form 6B) (12/07) -- Cont.**

In re  **Christopher Phillips**_____,                    Case No. _____
                              **Debtor**                                                          **(If known)**

# SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed.  Itemize. | X | | | |

_3_  continuation sheets attached                    Total  ➢ | **$ 212,109.25** |

(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

**B6 Declaration (Official Form 6 - Declaration) (12/07)**

In re **Christopher Phillips** _____        Case No. _____

_____**Debtor**                                                                                      (If known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____**62**_____ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date: **7/2/2008** _____                    Signature: **s/ Christopher Phillips** _____

                                                                                        **Christopher Phillips**

                                                                                                     Debtor

                                         [If joint case, both spouses must sign]


### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

(NOT  APPLICABLE)

---

*Penalty for making a false statement or concealing property: Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C §§ 152 and 3571.*

14

### UNITED STATES BANKRUPTCY COURT
**Western District of Washington**

Attorney Name, Address, Telephone No. & Bar ID No.

**Gloria Z. Nagler**                            13176

**Logan Building, Ste. 927
500 Union Street
Seattle, WA 98101-2332
(206) 224-3460**

In re:

**Christopher Phillips**

**BANKRUPTCY NO.**

(Debtor)

## DECLARATION RE: ELECTRONIC FILING OF
PETITION, SCHEDULES & STATEMENTS

### PART 1- DECLARATION OF PETITIONER

I **Christopher Phillips**_____,

the undersigned debtor(s), **hereby declare under penalty of perjury** that the information provided in the electronically filed petition, statements, and schedules is true and correct.  I consent to my attorney sending my petition, this declaration, statements and schedules to the United States Bankruptcy Court. I understand that this DECLARATION RE: ELECTRONIC FILING is to be filed with the Clerk of the Court no later than **5 business days** following the date the petition was electronically filed. I understand that failure to file the signed original of this DECLARATION will cause my case to be dismissed pursuant to 11.U.S.C. § 707(a)(3) without further notice.

☐   If petitioner is an individual whose debts are primarily consumer debts and who has chosen to file under chapter 7:
I am aware that I may proceed under chapter 7, 11, 12 or 13 of Title 11, United States Code, understand the relief available under each chapter, and choose to proceed under chapter 7. I request relief in accordance with the chapter specified in this petition.

☐   If petitioner is a corporation or partnership: I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor. The debtor requests relief  in accordance with the chapter specified in this petition.

☐   If petitioner files an application to pay filing fee in installments: I certify that I completed an application to pay the filing fee in installments. I am aware that the bankruptcy case will be dismissed and I may not receive a discharge of my debts if the fee is not paid within 120 days of the date of filing the petition.

Dated:        **7/2/2008**

Signed:    **s/ Christopher Phillips**_____
                                          (Applicant)

### PART II - DECLARATION OF ATTORNEY

I **declare under penalty of perjury** that the debtor(s) signed this form before I electronically transmitted the petition, schedules, and statements to the United States Bankruptcy Court, and have followed all other requirements in General Order No. 3. If an individual, I further declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11,12 or 13 of Title 11, United States Code, and have explained the relief available under each chapter. This declaration is based on the information of which I have knowledge.

Dated:        **7/2/2008**

                                          **/s/ Gloria Z. Nagler**_____
[Local Rules W.D. Wash. Bankr. form 6]                    Attorney for Debtor(s)

Exhibit 4

Honorable Karen A. Overstreet
November 6, 2009; 9:30 a.m.

Western District of Washington
**FILED**
at Seattle

NOV 0 6 2009

U.S. Bankruptcy Court

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re: | Chapter 7 |
| | Bankruptcy No. 08-14147 |
| CHRISTOPHER PHILLIPS, | |
| d/b/a Seattle Eye Surgeons, P.S., d/b/a | |
| Lomas LASIK and Eye Surgery Center, | ORDER APPROVING COMPROMISE |
| | OF CLAIM |
| Debtor(s). | |

THIS MATTER having come regularly before the below-signed judge of the above-entitled court upon the trustee's motion to compromise a claim with the debtor, proper notice having been given, Richard W. Lomas M.D. having timely objected, and said objection having been overruled or otherwise incorporated into the terms of this order, good cause appearing, and it being in the best interest of the estate, now, therefore, it is hereby

ORDERED that the trustee's settlement with the debtor is approved, whereby the trustee will abandon all of the personal property listed on the debtor's Amended Schedule B, with the exception of the claims against Prairie Eye Center, any claims arising or related to Standard Insurance disability income insurance policy number 00C792466, claims related to Adversary No. 08-01232, the interpleaded funds in Adversary No. 09-01358 and any assets that have not been disclosed, in exchange for a payment from the debtor of $12,000, as more particularly described in the settlement agreement attached hereto and incorporated herein.

////

////

////

ORDER APPROVING
COMPROMISE OF CLAIM
090911fOrd  Page 1

 **ORIGINAL**

THE RIGBY LAW FIRM
600 Stewart Street, Suite 1908
Seattle, WA 98101 - (206) 441-0826

1    IT IS HEREBY FURTHER ORDERED that the abandonment will become effective upon

2  the filing of a notice of abandonment with the court.

3    DONE IN OPEN COURT this ____6ᵗʰ____ day of November, 2009.

4

5

6    _____
     KAREN A. OVERSTREET

7    UNITED STATES BANKRUPTCY JUDGE

8  Presented By:

9  THE RIGBY LAW FIRM

10

11 _____
   Rory C. Livesey, WSBA #17601

12 Of Attorneys for Trustee

13

14

15

16

17

18

19

20

21

22

23

24

25

**ORDER APPROVING
COMPROMISE OF CLAIM**
090911fOrd  Page 2

THE RIGBY LAW FIRM
600 Stewart Street, Suite 1908
Seattle, WA 98101 - (206) 441-
0826

1                                                               Honorable Karen A. Overstreet

2

3

4

5

6                IN THE UNITED STATES BANKRUPTCY COURT FOR THE
                     WESTERN DISTRICT OF WASHINGTON AT SEATTLE

7

8    In re:                                )    Chapter 7
                                    )    Bankruptcy No. 08-14147

9    CHRISTOPHER PHILLIPS,          )
    d/b/a Seattle Eye Surgeons, P.S., d/b/a   )    SETTLEMENT AGREEMENT
    Lomas LASIK and Eye Surgery Center,  )

10                                 )
                Debtor(s).             )

11    _____)

12         This Agreement is entered into on the date last written below between Nancy James,

13   Bankruptcy Trustee for Christopher Phillips, ("Trustee"), and Christopher Phillips ("Phillips").

14         WHEREAS, Phillips filed a Chapter 7 bankruptcy petition in the United States Bankruptcy

15   Court for the Western District of Washington at Seattle on July 2, 2008 under the above-referenced

16   bankruptcy number;

17         WHEREAS, Nancy James is the duly authorized trustee appointed in that case;

18         WHEREAS, On August 28, 2009, Phillips has filed an amended Schedule B - Personal

19   Property listing various items of personal property as assets of the estate;

20         WHEREAS, On August 28, 2009, Phillips has filed an amended Schedule C - Exemptions

21   claiming certain assets listed on the amended Schedule B referenced in the preceding paragraph as

22   exempt;

23         WHEREAS, the Trustee has timely objected to the amended exemptions; and

24         WHEREAS, the parties desire to avoid the costs and uncertainty of litigation.

25         NOW, THEREFORE, in consideration of the mutual promises and covenants herein, the
   parties agree as follows:

**SETTLEMENT AGREEMENT**
090911cAgr Page 1

THE RIGBY LAW FIRM
600 Stewart Street, Suite 1908
Seattle, WA 98101 - (206) 441-0826

1       1.     This Agreement is contingent upon the Bankruptcy Court entering a "Final Order."

2    A Final Order is an order entered by the Bankruptcy Court, after notice to parties in interest,

3    approving this Agreement where no objection to the entry of the order is filed.  If an objection to the

4    entry of an order approving this Agreement is filed, a Final Order is an order entered by the

5    Bankruptcy Court approving this Agreement and the expiration of the ten day appeal period after the

6    entry of that order, during which period neither a notice of appeal of the order nor a motion to

7    reconsider the order is filed.  If a Final Order approving this Agreement does not exist on or before

8    60 days from the date last written below, then this Agreement is null and void.  If the Bankruptcy

9    Court denies the motion to approve this Agreement then it is null and void.  The Trustee will move

10    to obtain an order approving this Agreement as soon as is reasonably possible, and will use his or

11    her best efforts to seek approval of this Agreement.

12       2.     In consideration of this settlement Phillips has paid the estate $12,000.  If this

13    settlement is not approved by the court, the Trustee will return the $12,000 to Phillips.

14       3.     Ten (10) days after entry of a final order, the Trustee will file a notice with the court

15    in the form attached hereto abandoning the estate's interest in the personal property listed thereon.

16    Specifically excepted from the list of property to be abandoned will be the claim against Prairie Eye

17    Center, any claims arising or related to Standard Insurance disability income insurance policy

18    number 00C792466, claims related to Adversary No. 08-01232 or the interpleaded funds in

19    Adversary No. 09-01358.  The abandonment specifically will not include any assets that have not

20    been disclosed.

21       4.     The undersigned hereby declare that each is authorized to execute this Agreement and

22    that the terms of this Agreement are for the express purpose of precluding forever any further

23    additional claim or claims by the parties arising out of or in any way connected with the abandoned

24    property referenced in paragraph 3 above.

25

**SETTLEMENT AGREEMENT**
090911cAgr Page 2

THE RIGBY LAW FIRM
600 Stewart Street, Suite 1908
Seattle, WA 98101 - (206) 441-
0826

20

1    5.    Nothing in this Agreement will be construed as a waiver or a resolution of any of the

2    issues raised in Adversary No. 08-01232 regarding Standard Insurance disability income insurance

3    policy number 00C792466 or Phillips' claim of exemption therein.

4    6.    This Agreement contains the entire agreement between the parties hereto and the

5    terms of this Agreement are contractual and not a mere recital.

6    7.    This Agreement shall be interpreted in accordance with the laws of the State of

7    Washington.

8    8.    This Agreement may be signed by the parties in counterparts and the signatures

9    attached hereto which shall be as effective as if one document were signed by all.

10    DATED this _____ day of November, 2009.

11

12

13

14    _____
      Nancy James, Bankruptcy Trustee for
      Christopher Phillips

15    DATED this _____ day of November, 2009.

16

17

18

19    _____
      Christopher Phillips, Debtor

20

21

22

23

24

25

**SETTLEMENT AGREEMENT**
090911cAgr  Page 3

THE RIGBY LAW FIRM
600 Stewart Street, Suite 1908
Seattle, WA 98101 - (206) 441-0826

21

Exhibit 5

1                                                              Honorable Karen A. Overstreet

2

3

4

5

6

7                    IN THE UNITED STATES BANKRUPTCY COURT FOR THE
                            WESTERN DISTRICT OF WASHINGTON AT SEATTLE
8
        In re:                                        )    Chapter 7
9                                                     )    Bankruptcy No. 08-14147
        CHRISTOPHER PHILLIPS,                         )
10      d/b/a Seattle Eye Surgeons, P.S., d/b/a       )    NOTICE OF
        Lomas LASIK and Eye Surgery Center,           )    ABANDONMENT
11                                                    )
                            Debtor(s).                )
12      _____ )

13              COMES NOW the duly appointed trustee, Nancy James, through counsel, The Rigby Law

14      Firm, and Rory C. Livesey, pursuant to an Order Approving Compromise of Claim with the debtor

15      entered on November 6, 2009, and does abandon the following personal property listed on the

16      debtor's Schedule B filed on August 28, 2009, with their value on the date of filing:

17              Cash                                       $        100.00

18              Key Bank Checking Account
                    No. 472572052968                       $         44.96
19
                Household Goods, Furnishings, Pictures,
20                  Books, Wearing Apparel and Jewelry      $      3,220.00

21              New York Life Term Insurance Policy
                    No. 76215630                           $          0.00
22
                TD Ameritrade IRA Acct. No. 786002136      $     21,142.62
23
                Ameritrade Stock Acct. No. 870504393       $          0.00
24
                Stock in Seattle Eye Surgeons              $          0.00
25
                Back pay and out of pocket expenses owed
                    by Seattle Eye Surgeons ( likely
                    uncollectible)                         $        426.67

**NOTICE OF ABANDONMENT**                          **THE RIGBY LAW FIRM**
090928eNot  Page 1                                 600 Stewart Street, Suite 1908
                                                   Seattle, WA 98101 - (206) 441-0826

23

| | | | |
|---|---|---|---|
| 1 | 2007 tax refund | $ | 3,000.00 |
| 2 | Possible claims against International | | |
| | Optical, Tom Foster, Ann Foster | | |
| 3 | Valley Eye and Laser Clinic Center, | | |
| | Inc., Paul Joos, M.D., Peter Jones, | | |
| 4 | M.D., Chris Monson, M.D., Viet Bui, | | |
| | M.D., for various torts including | | |
| 5 | conversion | $ | Unknown |
| 6 | Potential claim against Dr. Richard Lomas and | | |
| | Lomas Lasik and Eye Care Center, Inc. | | |
| 7 | for fraudulent misrepresentation | | |
| | associated with sale of business and | | |
| 8 | similar or related torts | $ | Unknown |
| 9 | Potential claim against Dr. Richard Lomas for | | |
| | defamation and similar or related torts | $ | Unknown |
| 10 | | | |
| | Potential claim against landlord for deposit held | | |
| 11 | and similar or related torts | $ | 1,675.00 |
| 12 | Potential claim against the City of Renton and | | |
| | Officer Kordel of the Renton Police | | |
| 13 | Department for malicious prosecution | | |
| | and illegal entry of debtor's home and | | |
| 14 | similar or related torts | $ | Unknown |
| 15 | Potential claim for libel and slander against | | |
| | neighbor and similar or related torts | $ | Unknown |
| 16 | | | |
| | Potential claim for unemployment income | $ | Unknown |
| 17 | | | |
| | Potential claims against media for libel and | | |
| 18 | slander and similar or related torts | $ | Unknown |
| 19 | Potential medical malpractice claim against | | |
| | Hazeldon Foundation and similar | | |
| 20 | or related torts | $ | Unknown |
| 21 | Potential claim against the City of Renton and | | |
| | the Renton Police Department for | | |
| 22 | illegal entry into debtor's home and | | |
| | the inappropriate charging of him with | | |
| 23 | three crimes and similar or related torts | $ | Unknown |
| 24 | 2001 Acura MBX | $ | 9,500.00 |
| 25 | | | |

**NOTICE OF ABANDONMENT**
090928eNot  Page 2

**THE RIGBY LAW FIRM**
600 Stewart Street, Suite 1908
Seattle, WA 98101 - (206) 441-0826

1    This abandonment does not include property specifically excluded from the Settlement

2    Agreement, any property of the estate not listed on the debtor's Amended Schedule B, or any

3    property previously administered by the trustee.

4    DATED this 18th day of November, 2009.

5                                  THE RIGBY LAW FIRM

6

7                                  /S/ *Rory C. Livesey*

8                                  Rory C. Livesey, WSBA #17601
                                   Of Attorneys for Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**NOTICE OF ABANDONMENT**
090928eNot  Page 3

**THE RIGBY LAW FIRM**
600 Stewart Street, Suite 1908
Seattle, WA 98101 - (206) 441-0826

Case 08-14147-MLB   Doc 144   Filed 11/19/09   Entered 11/19/09 11:48:08   Page 3 of 3

25

Exhibit 6

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
http://www.wawb.uscourts.gov

FILED
Western District of Washington
at Seattle

AUG 27 2009

U.S. Bankruptcy Court

## AMENDMENT COVER SHEET

DEBTOR       LAST          NAME                                    Phillips,            Christopher

_____

CASE NUMBER    08-14147 _____        CHAPTER  7 _____

ATTORNEY FOR DEBTOR _____ Pro se _____        PHONE    902.424.5235

_____

## PLEASE CHECK WHAT IS BEING AMENDED

PLEASE INDICATE WHICH SCHEDULE IS BEING AMENDED - *ONLY ONE $26.00 FEE REQUIRED IF AMENDMENT CONTAINS MORE THAN ONE CHANGE TO THE SCHEDULES AND LIST OF CREDITORS.

SUBMIT ORIGINAL ONLY ᴮ NO COPIES REQUIRED

1.  PETITION:       Change debtor(s) name requires Motion and Ex Parte Order (No fee required)

2.   MATRIX:       Adding, Deleting Creditors   (Requires $26 Fee)

        No fee is required when the nature of the amendment is to change the address of a creditor or an attorney for a creditor listed on the schedules or to add the name and address of an attorney for a listed creditor.

 When submitting an amended Matrix, send Matrix with ONLY the amended creditors.

3.  SCHEDULES:

        D, E, F  (Requires $26 fee - *No Fee required for Chapter 13 cases, LBR 1009-1(c)(3))

A fee is charged to add creditors, delete creditors, change the amount of a debt, or change the classification of a debt.

A, B, C, G, H, I, J,  (No fee required)

4.  AMENDING AMOUNTS/TOTALS OF SCHEDULES:

D, E, F  (Requires $26 fee - *No Fee required for Chapter 13 cases, LBR 1009-1(c)(3))

A, B, C, G, H, I, J,  (No fee required)

5.  STATEMENT OF FINANCIAL AFFAIRS (No fee required)

It is the responsibility of the debtor to notify additional creditors by sending a section 341 meeting of creditors notice and/or Discharge Order to the individuals or companies added to the schedules/matrix.  A certificate of mailing in regard to this notification filed with the Clerk's office is appropriate.  If the case presently is closed a Motion To Reopen, Notice of Hearing, Proposed Order and Proof of Service, a filing fee, and the amendment fee must accompany the amendment.

Signature of Debtor

Rev 07/01/08

B6B (Official Form 6B) (12/07)

In re   **Christopher Phillips** _____   Case No. **08-14147** _____
                              **Debtor**                                              (If known)

# AMENDED - SCHEDULE B - PERSONAL PROPERTY

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand | | 100.00 | | 100.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Key Bank** **53 SW Sunset Blvd.** **Renton, WA  98057** **Checking account #472572052968** | | 44.96 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | **Bedroom furniture, couch, loveseat, chair, coffee table, end tables, TV, DVD player, dining table and chairs, laptop, cookware, dishware, kitchen untensils, small kitchen appliances,** | | 3,000.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | **Hardcover and paperback books, Cds, DVDs, framed prints** | | 70.00 |
| 6. Wearing apparel. | | **Mens clothing, outerwear and shoes** | | 50.00 |
| 7. Furs and jewelry. | | **Wedding band** | | 100.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies.  Name insurance company of each policy and itemize surrender or refund value of each. | | **New York Life Insurance Co.** **4343 N. Scottsdale Rd.** **Suite 200** **Scottsdale, AZ  85251** **Term Life policy #76215630** | | 0.00 |
| 10. Annuities.  Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | **TD Ameritrade** **P.O. Box 2209** **Omaha, NE  68103-2209** **IRA #786002136** | | 25,142.62 |
| 13 Stock and interests in incorporated and unincorporated businesses. Itemize | | **Ameritrade** **P.O. Box 2270** **Omaha, NE  68103-2270** **Stock account #870504393** | | 0.00 |

*CP*

B6B (Official Form 6B) (12/07) – Cont.

In re   **Christopher Phillips** _____          Case No. **08-14147** _____
                                    Debtor                                                    (If known)

# AMENDED - SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | **Seattle Eye Surgeons, PS d/b/a Lomas LASIK and Eye Surgery Center**<br><br>**100% ownership**<br><br>**Debts and expenses exceed income and assets.** | | 0.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15 Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Back pay and out-of-pocket expenses owed to debtor by Seattle Eye Surgeons.**<br><br>**Likely uncollectible** | | 426.67 |
| 17 Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | **2007 Tax refund.**<br><br>**Estimated and unfiled** | | 3,000.00 |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20 Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Disability claim/Potential increase in disability income.** *from Standard Insurance*<br><br>**Counterclaim** | | 6,600.00 |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Possible claims against: International Optical, Tom Foster, Ann Foster, Valley Eye & Laser Center, Inc., Paul Joos, M.D., Peter Jones, M.D.,  Chris Monson, M.D., Viet Bui, M.D. for various torts including conversion.** | | unknown |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Potential claim against Dr. Richard Lomas and Lomas Lasik & Eye Care Center, Inc. for fraudulent misrepresentation associated with sale of business** | | unknown |
| | | *CP* | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re   **Christopher Phillips** _____   Case No. **08-14147** _____
                              Debtor                                         (If known)

# AMENDED - SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims   Give estimated value of each. | | Potential claim against Dr. Richard Lomas for defamation.<br><br>Value unknown at this time, but Debtor intends to exempt entire claim | | unknown |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | | Potential claim against landlord for deposit held | | 1,675.00 |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | | Potential claim against the City of Renton and Officer Kordel of the Renton Police Department for Malicious Prosecution. *and illegal entry of debtor's home* | | unknown |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | | Potential Claim for libel and slander against neighbor.<br><br>Value unknown at this time, but Debtor intends to exempt entire claim | | unknown |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | | Potential claim for unpaid unemployments income. Likely uncollectible as claim has been previously denied. | | unknown |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | | Potential claims media for libel and slander.<br><br>Value unknown at this time, but Debtor intends to exempt entire claim | | unknown |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each | | Potential medical malpractice claim against Hazeldon Foundation<br><br>Value unknown at this time, but debtor intends to exempt entire claim | | unknown |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | | Refunded disability insurance premiums dating back to 2002 (yet to be received).  Debtor does not believe he is entitled to these funds. | | 8,260.13 |
| Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each | | The Prairie Eye  Center<br>2020 W. Iles Ave<br>Springfield IL  62707<br><br>Breach of contract claim | | 169,000.00 |
| 22  Patents, copyrights, and other intellectual property  Give particulars. | X | | | |

*CP*

B6B (Official Form 6B) (12/07) — Cont.

In re   Christopher Phillips _____ ,          Case No. 08-14147 _____
          **Debtor**                                                    **(If known)**

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 12  Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | | | |
| 14. Interests in partnerships or joint ventures.  Itemize. | | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | | | | |
| 16. Accounts receivable. | | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.  Give particulars. | | | | |
| 18. Other liquidated debts owed to debtor including tax refunds.  Give particulars. | | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A -- Real Property. | | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | | Potential claim against the City of Renton and the Renton Police Department for illegally entering debtor's home and inappropriately charging him with three crimes | | Unknown-Any estimate would also be nothing more than a guess |

CP

B6B (Official Form 6B) (12/07) -- Cont.

In re __Christopher Phillips_____,     Case No. __08-14147_____
          Debtor                                        (If known)

# SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | | | | |
| 16. Accounts receivable. | | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | | | |
| 19 Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A – Real Property. | | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | Debtor claims absolutely no interest in deposit of $3,613.19 which was deposited into an escrow account held by Attorney Glosser for the exclusive use of Seattle Eye Surgeons | | 0 |



B6B (Official Form 6B) (12/07) — Cont.

In re   **Christopher Phillips**                                    Case No. **08-14147**
                         _____                                        _____
                              **Debtor**                                              **(If known)**

# AMENDED - SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 23. Licenses, franchises, and other general intangibles.  Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2001 Accura MDX** | | **9,500.00** |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested.  Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed.  Itemize. | X | | | |

_5_ continuation sheets attached                    Total ►   **$ 226,969.38**

(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

*C P*

Exhibit 7

# Bill of Sale

Date: August 20, 2008

Between:

Christopher Phillips, individually (hereinafter, "Purchaser")
Seattle Eye Surgeons, PS (hereinafter "Seller")

Due to media coverage that did not portray Purchaser or Seller very favorably, it has become apparent that Seller will soon file a Chapter 7 Bankruptcy Petition.

Out of a desire to preserve any assets the future Bankruptcy Trustee for Seller abandons or elects not to administer before the close Seller's future bankruptcy case, to avoid unnecessary litigation over any of these assets, and to ensure proper action is taken by Seller while Seller is still in existence and able to take such action, Seller enters into this agreement with Purchaser individually and not as an officer of Seattle Eye Surgeons, PS.

In exchange for consideration of $1,000.00 cash, Purchaser hereby purchases all legal or equitable interests of Seattle Eye Surgeons in property which the future bankruptcy trustee for Seller subsequently abandons and/or fails to administer by the close of Seattle Eye Surgeon's bankruptcy case. The purchased property does not include any unscheduled legal or equitable interests and does not include any property encumbered by any debt in excess of said property's value. For all other purposes, this agreement shall not be construed to mean that Purchaser is accepting assignment of any of Seller's debt.

Due to threats from the State of Washington to garnish Seller's accounts and due to problems with Seller being able to maintain a checking account due to its president, Christopher Phillips, being placed on Chexsystems, the $1,000.00 consideration is to be paid in cash. Said funds are to be used only for the benefit of Seattle Eye Surgeons. The funds are to be used to pay wages for services provided to Seller by Kim Hogan between July 3, 2008 and the day that Seller declares bankruptcy. Said wages are to be paid in cash. In the event that there are remaining funds after paying Kim Hogan's wages, the remaining funds are to be applied to wages owed by Seller to Russ Marashchuk for services provided to Seller by Russ Marashchuk between July 3, 2008 and the day that Seller declares bankruptcy. Again, said wages are to be paid in cash.

In the event that a Court determines consideration paid under this contract was determined to be unfair or otherwise improper, a Court must determine what payment would be proper considering only the facts known on the date this document was signed . The Court must then provide Purchaser the option to pay any additional amount before voiding the contract. If legally permissible, any additional amount owed must first be deducted as a partial or full substitute for wages Seller owes Purchaser as of the date of Seller's future bankruptcy petition. Said wages shall not include any amount for unused vacation time. If any further amount is owed, Purchaser must then be given the option to pay any additional amount required by the Court but shall not be obligated to do so if Purchaser does not agree with the Court's valuation. In such an event, this agreement becomes void unless the issue is appealed to a higher court and said Court requires a smaller payment which is acceptable to Purchaser.

*CP*

36

This contract is to be considered effective on the date it is signed, but any applicable abandoned or unadminstered interest shall not vest in Purchaser until immediately after said interest is abandoned or, in the event of an unadminstered asset, immediately upon closure of the Seller's bankruptcy case.

If a Court determines that any portion of Seller's Articles of Incorporation bar any aspect of this transaction, said Articles of Incorporation are to be considered amended by this agreement to the minimum extent necessary to assure the execution of this agreement.

If any portion of this agreement is barred or determined in any way to be void, the remaining portions should be given their full effect with the exception that Purchaser shall in no way be required to accept assignment of debt or any asset which is encumbered by a debt in excess of the asset's value.

Christopher Phillips, in his capacity as the President and sole shareholder of Seattle Eye Surgeons, hereby approves this transaction.

This agreement is to be interpreted under the laws of Washington State. Venue shall be King County Superior Court.

Executed this 20th Day of August, 2008.


_____

Christopher Phillips, Individually



_____

Seattle Eye Surgeons
By Christopher Phillips its President and Sole Shareholder


Page 2 of 2

37

Exhibit 8

B1 (Official Form 1) (1/08)

| United States Bankruptcy Court<br>Western District of Washington | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Seattle Eye Surgeons, PS** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**dba Lomas LASIK And Eye Surgery Centers** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): **36-4611122** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**17800 Talbout Road S<br>Renton, WA**<br>ZIPCODE **98055** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code):<br>ZIPCODE |
| County of Residence or of the Principal Place of Business:<br>**King** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address)<br>ZIPCODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIPCODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>**17800 Talbot Road S, Renton, WA**<br>ZIPCODE **98055** | |

| Type of Debtor<br>(Form of Organization)<br>(Check **one** box.) | Nature of Business<br>(Check **one** box.) | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check **one** box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☑ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☑ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☑ Chapter 7        ☐ Chapter 15 Petition for<br>☐ Chapter 9            Recognition of a Foreign<br>☐ Chapter 11          Main Proceeding<br>☐ Chapter 12        ☐ Chapter 15 Petition for<br>☐ Chapter 13          Recognition of a Foreign<br>                            Nonmain Proceeding |
| | **Tax-Exempt Entity**<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box.)<br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."        ☑ Debts are primarily business debts. |

| Filing Fee (Check one box) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (Applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (Applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | **Check one box:**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts owed to non-insiders or affiliates are less than $2,190,000.<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>**Check all applicable boxes:**<br>☐ A plan is being filed with this petition<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

39

B1 (Official Form 1) (1/08)                                                                 Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Seattle Eye Surgeons, PS** |
|---|---|

### Prior Bankruptcy Case Filed Within Last 8 Years (If more than two, attach additional sheet)

| Location<br>Where Filed: **None** | Case Number: | Date Filed: |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor (If more than one, attach additional sheet)

| Name of Debtor:<br>**None** | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by § 342(b) of the Bankruptcy Code.<br><br>X _____<br>Signature of Attorney for Debtor(s)         Date |
|---|---|

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☒ No

### Exhibit D

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

    ☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

    ☐ Exhibit D also completed and signed by the joint debtor is attached a made a part of this petition.

### Information Regarding the Debtor - Venue
(Check any applicable box.)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Certification by a Debtor Who Resides as a Tenant of Residential Property
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____

(Name of landlord or lessor that obtained judgment)

_____

(Address of landlord or lessor)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B1 (Official Form 1) (1/08)                                                                                                   Page 3

| **Voluntary Petition** *(This page must be completed and filed in every case)* | Name of Debtor(s): **Seattle Eye Surgeons, PS** |
|---|---|

### Signatures

| **Signature(s) of Debtor (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct. [If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under Chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United State Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b). I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition. (Check only **one** box.) <br><br> ☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached. <br><br> ☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. |

X _____

Signature of Debtor

X _____

Signature of Joint Debtor

_____

Telephone Number (If not represented by attorney)

_____

Date

X _____

Signature of Foreign Representative

_____

Printed Name of Foreign Representative

_____

Date

| **Signature of Attorney\*** | **Signature of Non-Attorney Petition Preparer** |
|---|---|

X _____

Signature of Attorney for Debtor(s)

_____

Printed Name of Attorney for Debtor(s)

**Jeffrey B. Wells**

Firm Name

**500 Union St Suite 927**

Address

**Seattle, WA  98101-2332**

**(206) 624-0088**

Telephone Number

**October 18, 2008**

Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

I declare under penalty of perjury that: 1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; 2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h) and 342(b); 3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____

Printed Name and title, if any,  of Bankruptcy Petition Preparer

_____

Social Security Number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____

Address

X _____

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose social security number is provided above.

_____

Date

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X */s/ Christopher Phillips, MD*

Signature of Authorized Individual

**Christopher Phillips, MD**

Printed Name of Authorized Individual

**President**

Title of Authorized Individual

**October 18, 2008**

Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. § 110; 18 U.S.C. § 156.*

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**B6B (Official Form 6B) (12/07)**

**IN RE** Seattle Eye Surgeons, PS _____   Case No. _____
   Debtor(s)                                                                      (If known)

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1.  Cash on hand. | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **business account with Washington Mutual, Renton Branch** | | **0.00** |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, include audio, video, and computer equipment. | X | | | |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | X | | | |
| 7.  Furs and jewelry. | X | | | |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interest in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | | | |
| 10.  Annuities. Itemize and name each issue. | X | | | |
| 11.  Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12.  Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13.  Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14.  Interests in partnerships or joint ventures. Itemize. | X | | | |

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

42

B6B (Official Form 6B) (12/07) - Cont.

IN RE **Seattle Eye Surgeons, PS**                                          Case No. _____
_____
              Debtor(s)                                                              (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts receivable. | | various account receivables | | 160,000.00 |
| 17. Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | eye surgery equipment, microscopes, exam equipment and office furniture | | 300,000.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

43

B6B (Official Form 6B) (12/07) - Cont.

**IN RE** Seattle Eye Surgeons, PS _____  Case No. _____
  Debtor(s)                                                                    (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | | **claim against money held by Richard Lomas vaction & sick leave - $50,000 guarantee work - $17,000** | | **67,000.00** |
| | | **claim for refund from Lawrence Glosser** | | **3,016.00** |
| | | **claims against media for slander and libel** | | **unknown** |
| | | **Potential claim against: International Optical Tom Foster & Ann Foster Valley Eye & Laser Center, Inc Paul Joos M.D. Peter Jones M.D. Chris Monson M.D. Viet Bull M.D. for various torts including conversion** | | **unknown** |
| | | **terminated lease with R2R Investments for vacated office space** | | **unknown** |
| | | **various claims against Richard Lomas and LomasLasik & Eye Center Inc. for fraudulent misrepresentation and defamation** | | **unknown** |
| | | **TOTAL** | | **530,016.00** |

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

_____ **0** continuation sheets attached

(Include amounts from any continuation sheets attached.
Report total also on Summary of Schedules.)

B6 Declaration (Official Form 6 - Declaration) (12/07)

**IN RE** Seattle Eye Surgeons, PS _____   Case No. _____
                    Debtor(s)                                          (If known)

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date: _____     Signature: _____
                                                                                              Debtor

Date: _____     Signature: _____
                                                                              (Joint Debtor, if any)
                                                              [If joint case, both spouses must sign.]

### DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342 (b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

_____     _____
Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer     Social Security No. (Required by 11 U.S.C. § 110.)

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social security number of the officer, principal, responsible person, or partner who signs the document.*

_____
_____
Address

_____     _____
Signature of Bankruptcy Petition Preparer                                              Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document, unless the bankruptcy petition preparer is not an individual:

*If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.*

*A bankruptcy petition preparer's failure to comply with the provision of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  11 U.S.C. § 110; 18 U.S.C. § 156.*

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the **President** _____ (the president or other officer or an authorized agent of the corporation or a member or an authorized agent of the partnership) of the **Seattle Eye Surgeons, PS** _____ (corporation or partnership) named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____**39** sheets (*total shown on summary page plus 1*), and that they are true and correct to the best of my knowledge, information, and belief.

Date: **October 18, 2008** _____     Signature: ***/s/ Christopher Phillips, MD*** _____

                                              **Christopher Phillips, MD** _____
                                                              (Print or type name of individual signing on behalf of debtor)

*[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]*

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. §§ 152 and 3571.

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

*[If completed on behalf of a partnership or corporation]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information, and belief.

Date: **October 18, 2008**                    Signature: ***/s/ Christopher Phillips, MD***

                                        **Christopher Phillips, MD, President**
                                                                            Print Name and Title

         [An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

                        **0** continuation pages attached

    *Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. § 152 and 3571.*

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Exhibit 9

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
http://www.wawb.uscourts.gov



## AMENDMENT COVER SHEET

DEBTOR LAST NAME _Seattle Eye Surgeons_

CASE NUMBER _08-16943_          CHAPTER _7_

ATTORNEY FOR DEBTOR _Jeff Wells_     PHONE _(206) 624-0088_

## PLEASE CHECK WHAT IS BEING AMENDED

**PLEASE INDICATE WHICH SCHEDULE IS BEING AMENDED - *ONLY ONE $26.00 FEE REQUIRED IF AMENDMENT CONTAINS MORE THAN ONE CHANGE TO THE SCHEDULES AND LIST OF CREDITORS.**

**SUBMIT ORIGINAL ONLY – NO COPIES REQUIRED**

1. **PETITION:**   Change debtor(s) name requires Motion and Ex Parte Order (No fee required)

2. **MATRIX:**   Adding, Deleting Creditors  (Requires $26 Fee)

   **No fee is required when the nature of the amendment is to change the address of a creditor or an attorney for a creditor listed on the schedules or to add the name and address of an attorney for a listed creditor.**

   When submitting an amended Matrix, send Matrix with **ONLY** the amended creditors.

3. **SCHEDULES:**
   **D, E, F** (Requires $26 fee - *No Fee required for Chapter 13 cases, LBR 1009-1(c)(3))

   **A fee is charged to add creditors, delete creditors, change the amount of a debt, or change the classification of a debt.**

   A, (B), C, G, H, I, J, (No fee required)

4. **AMENDING AMOUNTS/TOTALS OF SCHEDULES:**
   **D, E, F** (Requires $26 fee - *No Fee required for Chapter 13 cases, LBR 1009-1(c)(3))

   A, B, C, G, H, I, J,  (No fee required)

5. **STATEMENT OF FINANCIAL AFFAIRS** (No fee required)

It is the responsibility of the debtor to notify additional creditors by sending a section 341 meeting of creditors notice and/or Discharge Order to the individuals or companies added to the schedules/matrix. A certificate of mailing in regard to this notification filed with the Clerk's office is appropriate.  If the case presently is closed a Motion To Reopen, Notice of Hearing, Proposed Order and Proof of Service, a filing fee, and the amendment fee must accompany the amendment.

_Christopher Phillips, President, Seattle Eye Surgeons_

Signature of Debtor

Rev 07/01/08

B6B (Official Form 6B) (12/07)

**IN RE Seattle Eye Surgeons, PS** _____ Case No. **08-16943**
_____Debtor(s)_____ _____(If known)

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m)

| | TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|---|
| 1 | Cash on hand | X | | | |
| 2 | Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives | | **business account with Washington Mutual, Renton Branch** | | 0.00 |
| 3 | Security deposits with public utilities, telephone companies, landlords, and others | X | | | |
| 4 | Household goods and furnishings, include audio, video, and computer equipment | X | | | |
| 5 | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles | X | | | |
| 6 | Wearing apparel | X | | | |
| 7 | Furs and jewelry | X | | | |
| 8 | Firearms and sports, photographic, and other hobby equipment | X | | | |
| 9 | Interest in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each | X | | | |
| 10 | Annuities. Itemize and name each issue | X | | | |
| 11 | Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1) Give particulars. (File separately the record(s) of any such interest(s) 11 U.S.C. § 521(c).) | X | | | |
| 12 | Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars | X | | | |
| 13 | Stock and interests in incorporated and unincorporated businesses. Itemize | X | | | |
| 14 | Interests in partnerships or joint ventures. Itemize | X | | | |

_(signature)_ (Christopher Phillips, President)

© 1993-2008 EZ-Filing, Inc [1-800-998-2424] - Forms Software Only

B6B (Official Form 6B) (12/07) - Cont.

**IN RE** Seattle Eye Surgeons, PS _____   Case No. **08-16943**
                          Debtor(s)                                      (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| | TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|---|
| 15 | Government and corporate bonds and other negotiable and non-negotiable instruments | X | | | |
| 16 | Accounts receivable | | various account receivables | | 160,000.00 |
| 17 | Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled Give particulars | X | | | |
| 18 | Other liquidated debts owed to debtor including tax refunds Give particulars | X | | | |
| 19 | Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property | X | | | |
| 20 | Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust | X | | | |
| 21 | Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims Give estimated value of each | X | | | |
| 22 | Patents, copyrights, and other intellectual property Give particulars | X | | | |
| 23 | Licenses, franchises, and other general intangibles Give particulars | X | | | |
| 24 | Customer lists or other compilations containing personally identifiable information (as defined in 11 U S C § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes | X | | | |
| 25 | Automobiles, trucks, trailers, and other vehicles and accessories | X | | | |
| 26 | Boats, motors, and accessories | X | | | |
| 27 | Aircraft and accessories | X | | | |
| 28 | Office equipment, furnishings, and supplies | | eye surgery equipment, microscopes, exam equipment and office furniture | | 300,000.00 |
| 29 | Machinery, fixtures, equipment, and supplies used in business | X | | | |
| 30 | Inventory | X | | | |
| 31 | Animals | X | | | |

*© 1993-2008 EZ-Filing, Inc [1-800-998-2424] - Forms Software Only*

(Christopher Phillips, President)

B6B (Official Form 6B) (12/07) - Cont.

IN RE Seattle Eye Surgeons, PS _____  Case No. __08-16943__
                          Debtor(s)                                    (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 32  Crops - growing or harvested  Give particulars | X | | | |
| 33  Farming equipment and implements | X | | | |
| 34  Farm supplies, chemicals, and feed | X | | | |
| 35  Other personal property of any kind not already listed  Itemize | | **claim against money held by Richard Lomas vaction & sick leave - $50,000 guarantee work - $17,000** | | **67,000.00** |
| | | **claim for refund from Lawrence Glosser** | | **3,016.00** |
| | | **terminated lease with R2R Investments for vacated office space** | | **unknown** |
| | | Claims for damages against International Optical, Tom Foster, Ann Foster, Valley Eye and Laser Clinic Center, Inc., Paul Joos, M.D., Peter Jones, M.D., Chris Monson, M.D., and Viet Bui, M.D. for for various torts including conversion. | | unknown |
| | | Claims for damages against Dr. Richard Lomas stemming from defamation of Seattle Eye Surgeons owner, Dr. Christopher Phillips, and similar or related torts. | | unknown |
| | | Claims for damages against the City of Renton, the Renton Police Department and its officers for damages stemming from malicious prosecution and the illegal entry of Dr. Christopher Phillips' home and similar or related torts. | | unknown |
| | | Claims for damages against Christopher Phillips' neighbor, Larry Mayes, stemming from libel, slander and similar or related torts directed toward Dr. Christopher Phillips. | | unknown |
| | | Claims against the media for damages stemming from libel, slander and similar or related torts directed toward Dr. Christopher Phillips | | unknown |

*(Christopher Phillips, President)*

__0__ continuation sheets attached

TOTAL | **530,016.00**

(Include amounts from any continuation sheets attached
Report total also on Summary of Schedules )

© 1993-2008 EZ-Filing, Inc (1-800-998-2424) - Forms Software Only

Exhibit 10

**08-16943-SJS** Seattle Eye Surgeons PS
**Case type:** bk **Chapter:** 7 **Asset:** No **Vol:** v **Judge:** Samuel J. Steiner
**Date filed:** 10/18/2008 **Date of last filing:** 08/24/2010
**Date terminated:** 08/24/2010

# History

| Doc. No. | Dates | Description |
|---|---|---|
| -- | *Filed & Entered:* 10/18/2008 *Terminated:* 08/24/2010 | Receipt of Filng Fee Automatic docket of credit card payment |
| 1 | *Filed & Entered:* 10/18/2008 *Terminated:* 08/24/2010 | Chapter 7 Voluntary Petition |
| 2 | *Filed & Entered:* 10/19/2008 *Terminated:* 08/24/2010 | Meeting of Creditors Chapter 7 Business No Asset AutoAssign |
| -- | *Filed & Entered:* 10/20/2008 *Terminated:* 08/24/2010 | Set Petition Schedules Due Date |
| 3 | *Filed & Entered:* 10/20/2008 *Terminated:* 08/24/2010 | Notice of Deadline for Schedules, Statements and Lists |
| 4 | *Filed & Entered:* 10/20/2008 *Terminated:* 08/24/2010 | 341 Meeting of Creditors Sent to BNC for Mailing |
| 5 | *Filed & Entered:* 10/22/2008 *Terminated:* 08/24/2010 | BNC Certificate of Mailing - Meeting of Creditors |
| 6 | *Filed & Entered:* 10/22/2008 *Terminated:* 08/24/2010 | BNC Certificate of Notice |
| 7 | *Filed:* 10/27/2008 *Entered:* 10/28/2008 *Terminated:* 08/24/2010 | Returned Mail |
| -- | *Filed & Entered:* 10/30/2008 *Terminated:* 08/24/2010 | Receipt of Filng Fee Automatic docket of credit card payment |
| 8 | *Filed & Entered:* 10/30/2008 *Terminated:* 12/01/2008 | Motion for Relief from Stay and Abandonment |
| 9 | *Filed & Entered:* 10/30/2008 *Terminated:* 08/24/2010 | Declaration |
| 10 | *Filed & Entered:* 10/30/2008 *Terminated:* 08/24/2010 | Hearing Notice |
| 11 | *Filed & Entered:* 10/30/2008 *Terminated:* 08/24/2010 | Proof of Service |
| 12 | *Filed & Entered:* 11/04/2008 *Terminated:* 08/24/2010 | Balance of Schedules |
| 13 | *Filed & Entered:* 11/04/2008 *Terminated:* 08/24/2010 | Request for Special Notice |
| 14 | *Filed & Entered:* 11/07/2008 *Terminated:* 11/07/2008 | Motion to Seal |

| 15 | *Filed & Entered:* 11/07/2008<br>*Terminated:* 08/24/2010 | Declaration |
| 16 | *Filed & Entered:* 11/07/2008<br>*Terminated:* 08/24/2010 | Received UNSIGNED Order |
| 17 | *Filed & Entered:* 11/07/2008<br>*Terminated:* 08/24/2010 | Order Re Motion to Seal |
| 18 | *Filed & Entered:* 11/12/2008<br>*Terminated:* 08/24/2010 | Request for Special Notice |
| 19 | *Filed & Entered:* 11/20/2008<br>*Terminated:* 08/24/2010 | Chapter 7 Trustees Initial Report |
| -- | *Filed & Entered:* 12/01/2008<br>*Terminated:* 08/24/2010 | Notice to Court Unopposed Motion, Order to be Submitted |
| -- | *Filed & Entered:* 12/01/2008<br>*Terminated:* 08/24/2010 | Minutes Hearing Held |
| 20 | *Filed & Entered:* 12/01/2008<br>*Terminated:* 08/24/2010 | Declaration of No Objection |
| 21 | *Filed & Entered:* 12/01/2008<br>*Terminated:* 08/24/2010 | Declaration of No Objection |
| 22 | *Filed & Entered:* 12/01/2008<br>*Terminated:* 08/24/2010 | Received UNSIGNED Order |
| 23 | *Filed & Entered:* 12/01/2008<br>*Terminated:* 08/24/2010 | Order Re Motion for Relief from Stay and Abandonment |
| 24 | *Filed & Entered:* 12/05/2008<br>*Terminated:* 08/24/2010 | Request for Special Notice |
| -- | *Filed & Entered:* 12/09/2008<br>*Terminated:* 08/24/2010 | Receipt of Filng Fee Automatic docket of credit card payment |
| 25 | *Filed & Entered:* 12/09/2008<br>*Terminated:* 01/12/2009 | Motion for Relief from Stay and Abandonment |
| 26 | *Filed & Entered:* 12/09/2008<br>*Terminated:* 08/24/2010 | Affidavit |
| 27 | *Filed & Entered:* 12/09/2008<br>*Terminated:* 08/24/2010 | Hearing Notice |
| 28 | *Filed & Entered:* 12/09/2008<br>*Terminated:* 08/24/2010 | Proof of Service |
| -- | *Filed & Entered:* 12/17/2008<br>*Terminated:* 08/24/2010 | Receipt of Fee |
| 29 | *Filed & Entered:* 12/17/2008<br>*Terminated:* 08/24/2010 | Sealed Documents |
| 30 | *Filed & Entered:* 12/17/2008<br>*Terminated:* 08/24/2010 | Sealed Documents |
| -- | *Filed & Entered:* 12/22/2008<br>*Terminated:* 08/24/2010 | Receipt of Filng Fee Automatic docket of credit card payment |
| 31 | *Filed & Entered:* 12/22/2008 | Amending Schedules D E or F |

| | | |
|---|---|---|
| | *Terminated:* 08/24/2010 | |
| -- | *Filed & Entered:* 01/12/2009<br>*Terminated:* 08/24/2010 | Notice to Court Unopposed Motion, Order to be Submitted |
| -- | *Filed & Entered:* 01/12/2009<br>*Terminated:* 08/24/2010 | Minutes Hearing Held |
| 32 | *Filed & Entered:* 01/12/2009<br>*Terminated:* 08/24/2010 | Declaration of No Objection |
| 33 | *Filed & Entered:* 01/12/2009<br>*Terminated:* 08/24/2010 | Received UNSIGNED Order |
| 34 | *Filed & Entered:* 01/12/2009<br>*Terminated:* 08/24/2010 | Order Re Motion for Relief from Stay and Abandonment |
| 35 | *Filed & Entered:* 08/17/2009<br>*Terminated:* 08/24/2010 | Generic Notice |
| -- | *Filed & Entered:* 10/06/2009<br>*Terminated:* 08/24/2010 | Ch 7 Trustee Report of No Distribution |
| 36 | *Filed:* 11/10/2009<br>*Entered:* 11/16/2009<br>*Terminated:* 08/24/2010 | Change of Attorney Address |
| 37 | *Filed & Entered:* 02/23/2010<br>*Terminated:* 08/24/2010 | Motion for Relief from Stay |
| 38 | *Filed & Entered:* 02/24/2010<br>*Terminated:* 08/24/2010 | Letter from Court Requesting Fee |
| -- | *Filed & Entered:* 02/25/2010<br>*Terminated:* 08/24/2010 | Notice to Court Motion Withdrawn, Hearing Stricken |
| -- | *Filed & Entered:* 02/26/2010<br>*Terminated:* 08/24/2010 | Receipt of Filng Fee Automatic docket of credit card payment |
| -- | *Filed & Entered:* 03/10/2010<br>*Terminated:* 08/24/2010 | Minutes Hearing Held |
| 39 | *Filed & Entered:* 06/01/2010<br>*Terminated:* 08/24/2010 | Change of Attorney Address |
| 40 | *Filed:* 06/29/2010<br>*Entered:* 06/30/2010<br>*Terminated:* 08/24/2010 | Schedules |
| -- | *Filed & Entered:* 08/24/2010 | Order Approving Trustees Report of No Distribution and Closing Case |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/07/2011 18:50:22 | | | |
| **PACER Login:** | cp3130 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 08-16943-SJS Type: History |